IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00557-NRN

JAVONTE CHAMBERS, AS ASSIGNEE OF THE BANKRUPTCY ESTATE OF DYLAN
MCKAY AND ASSIGNEE OF THE BANKRUPTCY ESTATE OF RAIM MCKAY,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

---

## ORDER ON DISCOVERY DISPUTE

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on a discovery dispute in an insurance bad

faith case. Plaintiff Javonte Chambers ("Plaintiff" or "Mr. Chambers") wants access to

allegedly attorney-client privileged material contained in the claim file of Defendant

State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm is

resisting, in part because its insured, who were defendants in an underlying tort lawsuit,

refuse to waive the attorney-client privilege. Plaintiff also wants access to reserves

information and settlement authority information contained in the claim file. The insureds

have filed for bankruptcy because of the excess verdict entered against them in the

underlying tort lawsuit. The bankruptcy trustee, on behalf of the bankruptcy estate, has

assigned any bad faith claim that the insureds may have had against State Farm over to

Mr. Chambers.

Because of the importance and arguable complexity of the questions on the attorney-client privilege, the Court asked for formal briefing. Both Mr. Chambers and State Farm submitted briefs. *See* ECF Nos. 34 (Plaintiff's Discovery Dispute Brief), 33 (State Farm's Discovery Dispute Brief). Mr. Chambers filed a supplement to his brief, attaching a recent, seemingly relevant bankruptcy court order by Judge Michael E. Romero. *See* ECF Nos. 35 and 35-1 (*In Re: Ervin,* Case No. 23-12007 MER (Bankr. D. Colo. June 24, 2024)). The Court held argument on these discovery issues on August 21, 2024. At that hearing, the question was raised whether the bankruptcy trustee, Mr. Jeffrey Weinman (the "Trustee"), had formally waived any privileges that the estate may have had with respect to information contained in the underlying claim file. The day after the hearing, the Trustee filed a declaration under penalty of perjury explicitly waiving any and all privileges that the insured may have had or could have raised relating to State Farm's handling of the claims. *See* ECF No. 37.

## I.   FACTUAL BACKGROUND

In 2018, Mr. Chambers was a passenger in a BMW driven by Dylan McKay. The BMW, allegedly going 80 miles per hour, collided with a vehicle turning left at an intersection and Mr. Chambers and two others were injured. State Farm, the insurer for McKay, determined that McKay was 10% at fault and, subsequently, Mr. Chambers and two other injured individuals filed suit against McKay and his father, Raim McKay, under the family car doctrine theory.

No pre- or post-suit settlement was reached between the McKays and the injured parties. State Farm paid for the McKays' defense in the underlying tort lawsuit. The case proceeded to trial and verdict in March 2022. A judgment in excess of the

$100,000 policy limit was entered against the McKays. State Farm paid the policy's remaining limits for the judgment entered but refused to pay the excess.

The McKays subsequently filed two Chapter 7 bankruptcy actions because of the excess verdict. Therefore, the McKays' bad faith claim against State Farm became part of the bankruptcy estates. The Trustee then assigned any claims the McKays may have had against State Farm to Mr. Chambers. Thus, Mr. Chambers brings suit as the assignee of the Trustee for the McKays' bankruptcy estates.

Mr. Chambers claims that State Farm's 10% fault allocation in the underlying case was unreasonable on its face, and that State Farm breached its duty to pay the limit of the insurance policy pre-suit. Mr. Chambers further claims that State Farm moved to settle soon after the claimants' lawsuits were consolidated, which indicated that it had undervalued the risk to the McKays during its pre-suit assessment.

The McKays have refused to waive any privileges with respect to all documents relating to the underlying case. Indeed, Raim McKay expressly stated in writing that he was unwilling to waive his privilege rights, writing in an email, "Per attorney client privileges, you are not authorized to give up personal information to anyone." ECF No. 33-1. But, as noted above, the Trustee, for his part and on behalf of the estates, has (to the extent he can) waived any privileges that the McKays may have had with respect to the underlying suit. The question to be decided is whether the privileges are the Trustee's to waive.

Mr. Chambers now seeks (1) to discover reserves, settlement authority, and the claim file of all claimants; (2) a ruling on whether the McKays can claim attorney-client

and/or work product privilege concerning documents from the underlying case; and (3) a ruling on whether State Farm can raise work product privilege for the same documents.

State Farm objects to the production of reserves and settlement authority on the grounds that it is not relevant to the claims and not admissible. State Farm objects to the production the claim files for the other claimants due to privacy concerns related to those third parties' claims. Finally, State Farm believes that it has a duty and an obligation to respect the wishes of its insured, the McKays, who have refused to waive any privileges associated with the arguably privileged material contained in the underlying claim file.

## II.     THE ATTORNEY-CLIENT PRIVILEGE QUESTION

State Farm argues that it cannot waive a privilege held by its insureds. It cites *Evanston Ins. Co. v. Aminokit Laboratories, Inc.*, No. 15-cv-02665-RM-NYW, 2016 WL 9738102 (D. Colo. Oct. 21, 2016), for the proposition that the attorney-client privilege inures to the benefit and protection of the client—the McKays, in this case—to allow the client to gain counsel, advice, or direction with respect to the client's rights and obligations confidentially. And, in the context of an insurance action under Colorado law, "an attorney who is retained by an insurance carrier to defend the insured owes his duties to the insured, rather than the insurance carrier." *Id.* at *6. State Farm also cites cases outside of Colorado that hold that in the context of a bankruptcy court assignment of the estate's claim, no waiver of the attorney-client privilege occurs absent an express reference to such waiver in the bankruptcy court assignment order.

For example, in *In re Hicks*, 252 S.W.3d 790 (Tex. App. 2008), a situation not dissimilar to the instant case, a judgment debtor had filed for bankruptcy protection in

4

part because of an adverse $20 million personal injury verdict. In the bankruptcy

proceeding, the debtor assigned to the Chapter 13 trustee all claims, rights, and causes

of action, including insurance bad faith, that the debtor might have had against his

insurer. In an agreed order signed by the debtor and the bankruptcy judge, the

bankruptcy court ordered that the bankruptcy plan contain the above assignment

language, as well as the language regarding cooperation by the debtor to execute

instruments necessary to allow the trustee to develop and establish the basis for such

claims. The question was whether, in a subsequent lawsuit against the insurer by the

trustee (and the injured party in the underlying suit), the arguably privileged files of

debtor's counsel needed to be produced, which would vitiate the attorney-client

privilege. The claimed basis for allowing such disclosure was the assignment of claims

to the trustee by the debtor. The Texas Court of Appeals found that neither the

assignment nor the bankruptcy court order either explicitly or impliedly waived the

attorney-client privilege and refused to allow production. *Id.* at 796.

In the context of a corporate bankruptcy, the United States Supreme Court has

held that a bankruptcy trustee may waive a corporation's attorney-client privilege with

respect to prebankruptcy communications. *See Commodity Futures Trading Comm' n v.*

*Weintraub*, 471 U.S. 343, 356 (1985). The Supreme Court reasoned the power to

control the corporate attorney-client privilege is passed from corporate management to

the trustee "because the trustee's functions are more closely analogous to those of

management outside of bankruptcy than are the functions of the debtor's directors." *Id.*

But the Court expressly limited its holding to the privilege held by the corporation and

not an individual's attorney-client privilege. The Court specified that its "holding . . . has

no bearing on the problem of individual bankruptcy . . . . If control over that privilege

passes to a trustee, it must be under some theory different from the one that we

embrace in this case." *Id*. at 356–57.

In his detailed and thorough opinion in *In re: Ervin*, Judge Romero of the United

States Bankruptcy Court for the District of Colorado laid out the various approaches that

different courts across the country have taken to the question of what happens to the

attorney-client privilege in the context of an individual bankruptcy. *See* ECF No. 35-1.

Does the privilege pass to the trustee to be waived at her whim? Or does the debtor

retain the right to waive or not waive the privilege? The answer, according to Judge

Romero, following the logic of the Bankruptcy Court of the Southern District of Georgia

in *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020 (Bankr. S.D. Ga. 1998), and the

Bankruptcy Court of the District of Colorado in *In re Wilkerson*, 393 B.R. 734, 745

(Bankr. D. Colo. 2007), is that it depends. The court must use a balancing test to

determine whether the trustee and the debtor are in adversarial posture or not, and

whether the balancing of the parties' interests favors the trustee's control of the

attorney-client privilege and the ability to waive the privilege with respect to the

documents sought by the assignee of the claims. *See In re: Ervin*, ECF No. 35-1 at 12.

If the debtor and the trustee are in an adversarial position, and it is apparent that harm

would accrue to the debtor if the trustee were to be deemed the party in control of the

attorney-client privilege, then the debtor should remain in control of the privilege. *See In*

*re Wilkerson*, 393 B.R. at 744–745. In *Wilkerson*, the debtor was deemed to remain in

control of the privilege because of the adversarial position vis-à-vis the trustee. *Id*. In

*Ervin*, on the other hand, Judge Romero found that the trustee was not in any way

adverse to the debtor with respect to the claims in the underlying lawsuit; the trustee there was investigating potential claims which could benefit the estate and, if any surplus resulted, could benefit the debtor personally. *In re: Ervin*, ECF No. 35-1 at 13.

In the instant case, there has been no claim and no evidence that there is tension between the debtors and the Trustee. The Trustee has sought to maximize the recovery to the estates by assigning any claims over to Mr. Chambers. It is this Court's understanding that part of the Trustee's agreement with Mr. Chambers is that some portion of any recovery from this lawsuit against State Farm will be shared with the estates. Based on the balancing of the parties' interests, and assuming that the documents at issue are subject to the attorney-client privilege, the Court concludes that the Trustee has the right to waive the debtor's attorney-client privilege with respect to the underlying case. For the same reasons, the work product privilege cannot be invoked to withhold documents purportedly covered by the work product privilege. *See In re Ervin*, ECF No. 35-1 at 12-14 (citing *In re Foster,* 188 F.3d 1259, 1272 (10th Cir. 1999), for the proposition that "[w]hen a trustee's interest in a suit does not conflict with a debtor's, there is little reason to worry that sharing work-product will inhibit other attorneys, out of concern for their clients' future interests, from developing such materials.").

Therefore, the Court concludes that State Farm is not entitled to withhold, and is ordered to produce, those portions of its claim file from the underlying case that it believes to contain attorney-client or attorney-work product material.

### III.   THE RESERVES AND SETTLEMENT AUTHORITY QUESTION

State Farm seeks to withhold reserves and settlement authority information on the grounds that it is not relevant and not admissible at trial. This Court has previously ruled in similar circumstances that, while reserves and settlement authority may not ultimately be admissible at trial (depending on the circumstances and the facts of a particular case), it is discoverable in a bad faith case because it is potentially relevant to the insurer's good faith (or bad faith) conduct. *See Hicks v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 22-cv-02762-WJM-NRN, 2023 WL 6622751 (D. Colo. October 11, 2023). State Farm has given me no reason to overrule myself or deviate from what appears to be the "consensus in this District that, in an insurance bad faith case, evidence or pre-litigation reserves and settlement authority is potentially relevant . . . and therefore is discoverable." *Id.* at *4.*

Therefore, to the extent that Mr. Chambers seeks production of pages or entries from the underlying claim file that were redacted based on references to reserves or settlement authority, those entries or pages shall be produced by State Farm in an unredacted form.

### IV.   DISCOVERY OF THE CLAIM FILES OF THE OTHER CLAIMANTS

Finally, the Court agrees that protecting the "privacy interests" of the other claimants is not a basis for State Farm to withhold the claim files of the other claimants. First, the material can and should be considered as "confidential" under the Protective Order issued in this case. Second, it is important for Mr. Chambers, as he pursues its bad faith claim against State Farm, to know all the variables that State Farm was considering in deciding whether or not to offer policy limits pre-suit. Given the limited

overall policy limits and the presence of multiple injured parties, what was going on in

the claim files of the other claimants is relevant to an understanding of whether State

Farm took a reasonable approach to defending the McKays. I find that the alleged

privacy interests of the other claimants must yield to the truth-seeking function of the

discovery process. State Farm shall produce the claim files of the other claimants,

subject to the Protective Order.

**IT IS SO ORDERED.**

Dated: September 4, 2024
        Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge